IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. DEBORAH DARLENE CLARK

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-522     Roger Page, Judge**

---

**No. W1999-00893-CCA-R3-CD - Decided September 21, 2000**

---

The defendant, Deborah Darlene Clark, was convicted by a Madison County jury of aggravated kidnapping, aggravated robbery, and criminal impersonation. In this appeal the defendant claims the evidence is insufficient to support the verdicts. The court finds the evidence clearly sufficient to support the convictions and thus affirms the judgment of the trial court.

**Tenn. R. App. P. P. 3, Appeal as of Right; Judgment of the Circuit Court of Madison County is Affirmed**

SMITH, J., delivered the opinion of the court, in which WITT, J.,, and WEDEMEYER, J., joined.

Clifford K. McGown, Jr., Waverly, Tennessee, attorney for the appellant, Deborah Darlene Clark, (on appeal only)
George Morton George, District Public Defender, Jackson, Tennessee, attorney for the appellant, Deborah Darlene Clark, (at trial and of counsel on appeal)

Paul G. Summers, Attorney General and Reporter, and J. Ross Dyer, Assistant Attorney General, attorneys for the appellee, State of Tennessee

### OPINION

### Factual Background

On March 18, 1998, Kenneth Williams, a seventeen-year-old who lived with his parents in Beech Bluff, Tennessee, was alone at a fast-food restaurant in Jackson, Tennessee. Mr. Williams was getting out of his truck when he was approached by the defendant and her accomplice. The defendant's accomplice, an unidentified male, pushed Mr. Williams back into his car and told him to "scoot over." Mr. Williams did so, and the defendant got in the driver's seat of the truck. The defendant also took Williams' keys. The accomplice then went around the truck and sat in the passenger's seat. Mr. Williams was between the two assailants. The defendant demanded money, and Mr. Williams replied that he only had five (5) dollars. The assailants took the five (5) dollars, and told Mr. Williams to go to the bank to get more money. The defendant said that he did not have a bank account, but that he could get money from his parents' house.

The defendant drove Mr. Williams to his parents' house.  While the trio was en route, the defendant and her accomplice threatened to kill Mr. Williams several times if he did not cooperate. The defendant left her accomplice in the vehicle while she accompanied Mr. Williams in the house. Once inside, the defendant told Mr. Williams's parents that she was an undercover police officer, and that she had taken custody of their son after he had tried to solicit the defendant.  She then implied that she would release Mr. Williams if his parents would give her money.  Mr. Williams's mother asked where her son's truck was, and the defendant replied that another officer was outside in the truck.  Mr. Williams's mother then asked the defendant to bring the other officer into the house, but the defendant refused.  The defendant told Mr. Williams's parents that Mr. Williams would have to accompany her to the police station, and she took him back to the car.

Mr. Willams's father immediately followed his son and the defendant.  The defendant, her accomplice, and Mr. Williams drove away from the house, and Mr. Williams's father tried to follow them.  He could not keep up with the defendant, however, and he lost them.

The defendant and her accomplice then drove Mr. Williams back to Jackson.  While en route, they threatened to kill Mr. Williams again.  While stopped at a stop sign, Williams noticed a police car close by.  He attempted to reach over and honk the horn and flash the lights, but the defendant's accomplice pulled him back into his seat before the police officer noticed.  The defendant then drove behind the juvenile detention center and stopped the car. The defendant's accomplice then demanded that Mr. Williams give them all of his valuables.  He told them to take anything they wanted, and he gave them his wallet.   The defendant and her accomplice then tried to pry open a tool box in the back of the truck, but they were unsuccessful.  While they tried to pry open the tool box, Williams ran away from the vehicle to a local store, where he called the police.  The defendant and her accomplice got away, but not before stealing the contents of Mr. Williams's wallet, the faceplate to his car stereo, and, inexplicably, one of the floor mats from the truck.

The defendant contradicted Mr. Williams's testimony.  She testified that Mr. Williams solicited her for sex, and that she refused.  She did get into Mr. Williams's truck with him, however, because she wanted to borrow twenty (20) dollars.  Although Mr. Williams said he only had five (5) dollars with him, he told her that he could get more money at home. The defendant asked Mr. Williams his age, and he told her he was seventeen (17) years old. This worried the defendant, because her own son had died when he was seventeen (17).  She decided to make sure Mr. Williams got home safely, so she told him she was an undercover police officer, and she wanted to go to his parents' house.  The defendant thought that telling Mr. Williams that she was an undercover police officer was the only way that he would tell her his address.  She stopped to pick up a friend, because she was afraid the truck would break down, and the three of them drove to Mr. Williams's parents' house.

When they got to Mr. Williams's parents' house, the defendant told Mr. Williams's parents that she was an undercover police officer and that Mr. Williams had solicited her for sex.  After that, the defendant decided that her good deed was accomplished, and that she would like to go back to Jackson. Mr. Williams took her back to Jackson, and the trio drove near the Criminal Justice Center. The defendant began to lecture Mr. Williams about the dangers of solicitation of prostitutes whereupon Mr. Williams jumped out of the truck for no reason.  This frightened the defendant, and she left.  She denied having a weapon, threatening Mr. Williams or taking any of his valuables.

Following the trial, the defendant was convicted of aggravated kidnapping, aggravated

robbery, and criminal impersonation. The court sentenced her to eight years for the aggravated robbery, eight years for the aggravated kidnapping, and six months for the criminal impersonation, all to be served concurrently to each other.

## Sufficiency

When an appellant challenges the sufficiency of the evidence, this court is obliged to review that challenge according to certain well-settled principles. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Harris, 839 S .W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

The defendant argues that "the jury and the trial court erred in accrediting the testimony of Mr. Williams and his parents over that of Ms. Clark." However, the appellant is asking this court to reweigh the evidence. As stated above, this we may not do. Cabbage, 571 S.W.2d at 835. We may only determine if the jury had sufficient evidence to determine whether the defendant committed the crime.

Aggravated kidnapping is defined as "false imprisonment, as defined in [Tenn. Code. Ann.] § 39-13-302, committed . . . (5) [w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." Tenn. Code Ann. § 39-13-304. Section 39-13-302 defines false imprisonment as "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with another's liberty." Tenn. Code. Ann. § 39-13-302. In this case, Mr. Williams testified that the defendant and her accomplice forced Mr. Williams into his truck and threatened his life. Mr. Williams also testified that the defendant said she had a gun and made him feel a gun in her waistband. The defendant and her accomplice then drove Mr. Williams, against his will, to his parent's house. The defendant then forced Mr. Williams to leave his parent's house, and drove him to the juvenile justice center, where he escaped. In short, the testimony established that the defendant knowingly confined Mr. Williams and interfered with his liberty, and that she did so by threatening to use a gun. The evidence was sufficient to support an aggravated kidnapping charge.

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by putting the person in fear . . . accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Tenn. Code Ann. §§ 39-13-401, 39-13-402(a)(1). In this case, Mr. Williams testified that the defendant and her accomplice forced him to give them five (5) dollars. Later, the victim the

defendant made Mr. Williams feel a gun in her waistband, Then, near the end of the encounter, the defendant and her accomplice took the other contents of the wallet, a stereo faceplate, and a floor mat. Although the five dollars was taken before the defendant made Mr. Williams feel a weapon, the rest of the items were taken while Mr. Williams reasonably believed that the defendant had a gun and intended to use it. The evidence was sufficient to support an aggravated robbery charge.

Criminal impersonation is defined as "[p]retend[ing] to be an officer or employee of the government . . . with the intent to injure or defraud another person." The victim and both of his parents testified that the defendant pretended to be an undercover police officer and that she tried to obtain a bribe from the defendant's parents as an undercover officer, although she was not and never had been a police officer. The evidence was sufficient to support a conviction of criminal impersonation.

After viewing the evidence in the light most favorable to the state, we conclude that the state presented sufficient evidence for a rational trier of fact to convict the appellant of aggravated kidnapping, aggravated robbery, and criminal impersonation.

This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.